54

**Fitni ODZOSKI, Eljham Odzoski, Naile Odzoski, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General of the United States, Respondent.**

No. 06–2144–ag.

United States Court of Appeals, Second Circuit.

Jan. 12, 2007.

Shirley Tang, Hackensack, New Jersey, for Petitioners.

Richard B. Roper, U.S. Atty. for the Northern District of Texas, Katherine Savers McGovern, Asst. U.S. Atty., Dallas, Texas, for Respondent.

PRESENT: Hon. JON O. NEWMAN, Hon. ROBERT A. KATZMANN, Hon. REENA RAGGI, Circuit Judges.

## SUMMARY ORDER

Fitni Odzoski ("Odzoski"), Eljham Odzoski, and Naile Odzoski, natives and citizens of Macedonia, seek review of an April 12, 2006 order of the Board of Immigration Appeals ("BIA") affirming the November 3, 2004 decision of Immigration Judge ("IJ") Matthew J. D'Angelo denying petitioners' applications for asylum, withholding of removal and relief under the Con-

vention Against Torture ("CAT"). *In re Odzoski, Fitni,* No. A77 929 795 (B.I.A. Apr. 12 2006), *aff'g* No. A77 929 795 (Immig. Ct. Hartford Conn. Nov. 3, 2004). We assume the parties' familiarity with the underlying facts and procedural history of the case.

When the IJ's decision rests on multiple alternate grounds and the BIA adopts and affirms that decision without expressly addressing each of the grounds, this Court may review the entirety of the IJ's decision and need not confine its review to the grounds expressly addressed by the BIA. *Ming Xia Chen v. BIA,* 435 F.3d 141, 144 (2d Cir.2006). This Court reviews the agency's factual findings under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 & n. 7 (2d Cir.2004). However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed unless we can confidently predict that the IJ would adhere to the decision on remand. *Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 334–36 (2d Cir.2006); *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 401–02 (2d Cir.2005). The Court reviews questions of law and the application of law to fact *de novo.* *See Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003).

▆▆▆ The IJ found Odzoski not credible regarding his claim to have suffered persecution based on (1) his participation in demonstrations organized by the Democratic Party of Albania in 1994, 1997, and 2001, including being beaten and otherwise mistreated by the police during the latter two demonstrations; and (2) being questioned on several occasions by the police concerning his relationship with a friend who was arrested for possessing illegal firearms. The IJ reasonably based this finding on Odzoski's failure to mention during his airport interview any of these incidents or to claim during that interview that the police had mistreated him or that they sought him out for mistreatment based on his ethnicity, his nationality, or any particular social group. *See Majidi v. Gonzales,* 430 F.3d 77, 79–81 (2d Cir.2005). Since the only evidence of a threat of future persecution to Odzoski regarding this claim depended upon his credibility, the adverse credibility determination in this case necessarily precludes success on his claims of a well-founded fear of persecution and for withholding of removal on that basis. *See Paul v. Gonzales,* 444 F.3d 148, 154 (2d Cir.2006); *Wu Biao Chen v. INS,* 344 F.3d 272, 275 (2d Cir.2003).

In determining that there was no evidence in the record that Odzoski "ever objected to committing inhuman acts while in the military," the IJ apparently understood Odzoski's claim to be that he objected to military service because, in part, he did not want to commit human rights abuses against members of his own ethnic group who were suspected of belonging to the National Liberation Army ("NLA"), an ethnic Albanian rebel group. As a general matter, "compulsory military service does not provide asylum seekers with adequate cause for claiming persecution." *Islami v. Gonzales,* 412 F.3d 391, 396 (2d Cir.2005). This Court has recognized two exceptions to this general rule: (1) where an individual's refusal to join the military leads to "disproportionately excessive penalties" based on his race, religion, nationality, membership in a social group, or political opinion; and (2) where the individual refuses to join a "military force condemned by the international community." *Id.* (internal quotation marks omitted). The requirements for stating a claim under the latter exception "are met at a significantly

lower threshold of military wrongdoing" when the military is directing the abuses at the individual's own ethnic group. *See id.* at 397. Reports and news articles in the record, including the 2001 State Department Country Report on Human Rights Practices in Macedonia, confirm that Macedonian forces committed human rights atrocities against Albanians suspected of belonging to the NLA during the 2001 conflict.

■ The IJ denied Odzoski's military service claim because "a sovereign government has the right to require military service and may enforce that requirement with reasonable penalties," Odzoski volunteered for the military in 1995 and was aware that he could be called up on active duty in the future, and he presented no evidence that he objected to committing human rights violations while serving in the military in 1995.[1] However, notwithstanding Macedonia's general right to require military service, Odzoski's fear of retribution for his refusal to rejoin the military in 2001 to avoid committing human rights abuses against other ethnic Albanians constituted past persecution under *Islami*. Because these abuses occurred in 2001, it is immaterial that Odzoski did not protest against violations in 1995 and that he volunteered for the military knowing that he could be called to active duty in the future. The IJ erred in concluding that Odzoski did not allege past persecution based on his refusal to serve in the Macedonian military in 2001, and the BIA's opinion did not correct this error.

■ An asylum applicant who successfully demonstrates past persecution is entitled to a presumption of a well-founded fear of future persecution. 8 C.F.R.

§ 1208.13(b)(1). Upon a showing of past persecution, the burden shifts to the Government to rebut the presumption of future persecution, which may be done by showing that conditions in the applicant's country of nationality have fundamentally changed such that the applicant no longer has a well-founded fear of persecution. *See id.* § 1208.13(b)(1)(i)(A), (ii); *see also Islami*, 412 F.3d at 397. The IJ concluded that Odzoski fell "far short of his burden of proof to demonstrate that he has a[n] objective fear that is reasonable." The IJ's reasoning in this regard was flawed because he placed the burden of showing a well-founded fear of future persecution on Odzoski when, as discussed above, the Government bore the burden of rebutting the presumption of well-founded fear. However, we are confident that the agency would reach the same conclusion on remand even were the burden shifted to the Government.

In rejecting Odzoski's claims of a well-founded fear of persecution, the IJ concluded that there was no evidence that the Macedonian authorities would be interested in Odzoski because (1) the former leader of the Albanian armed opposition group had joined the national coalition government in 2002; (2) Macedonia was relatively stable; (3) Odzoski was able to travel in and out of Macedonia numerous times on his own passport, which was issued in his name; (4) his family continued to live, unharmed, in the same family home where they lived in 2001 when he left the country, even though the military allegedly searched for him there; and (5) Odzoski's wife and child were able to leave and return to Macedonia in 2001 with their real passports. The first two observations reflect the IJ's appreciation

---

1. The IJ did not make an adverse credibility determination with respect to the military service claim.

of the fundamental change in conditions in Macedonia since 2001. According to the 2003 State Department Country Report on Human Rights Practices in Macedonia, which is in the administrative record, the armed conflict of 2001 had ceased, the Macedonian government generally respected human rights, opposition parties were victorious in September 2002 elections, and the ruling coalition included an ethnic Albanian party. In light of these facts, we are confident that the agency would find on remand that the Government had sustained its burden of showing that Odzoski would not be forced to commit human rights abuses against ethnic Albanians were he to return to Macedonia and rejoin the military. *See Islami,* 412 F.3d at 397–98 (holding that the Government's burden of rebutting a presumption of persecution is more easily satisfied when the past persecution implicates different practices and policies than the allegations of future persecution, such as when the petitioner's future fears did not relate to military service, which was the basis of his past persecution claim).

Since Odzoski does not raise in his brief to this Court his claim that the Macedonian government would persecute him once he reported for military service by sending him to the front line without ammunition, he has waived that claim. *See Yueqing Zhang v. Gonzales,* 426 F.3d 540, 546 n. 7 (2d Cir.2005). Further, because Odzoski does not meaningfully raise his CAT claim in his brief, that claim is deemed waived. *See id.*

For the foregoing reasons, we DENY this petition. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).